I would like to reserve four minutes. Four minutes. Four minutes it is. And my name is Mitchell Schley. The Law Offices of Mitchell Schley. I represent the plaintiff, Patricia Thompson. If it may please the court. We all know that in the run-up to the mortgage crisis in this country, there was a feverish effort by mortgage companies to sell mortgages and package them for securities. And Patricia Thompson was an employee, a low-level employee, a mortgage underwriter, who would get an application and there was a checklist and she had to see if the application matched up with the checklist. And she was under, and her colleagues were under, tremendous pressure to do the work and to work long hours, to work through lunch, to work evenings, to work weekends, to work at home because there were targets as alleged in the complaint with respect to what work that had to be done. Now, at one point she went to one of the owners, Mr. Chapman, this is again, everything I'm saying is alleged in the complaint, and said, do we get overtime for all this work? And what did he say as alleged in the complaint? I don't pay my underwriters overtime. He said it. She walked away. Now, I don't think Ms. Thompson believed at the time that that statement was made that that was the final word on the issue. She had to believe that there was an avenue to challenge that decision by the employer. And she came to lawyers like myself. But it turns out, to her deep surprise and to us, that that was the final word. That the decision of the company that she doesn't get overtime, that this is a job that doesn't require the company to pay overtime, was the final word. Because the district court has said that the company's decision is the final word. Because the door has been shut by the district court. So why should we apply individual liability to both Mr. Chapman and Mr. Lamparotta? Apropos of your this is the final word comment. Yeah, yeah. Well, the FLSA, we know, extends employer liability to individuals. Some statutes don't, of course. But the feeling of Congress, and I think I'm just talking based on general knowledge of the FLSA and well documented, is that in this area, Congress wanted it to be known that a individual, particularly an individual who owns a privately held closed corporation, could not hide behind the corporate veil to say, I'm not paying. Why? Because they would need to know that. Do you allege that this is a privately held corporation that is essentially run by two people? We allege in the complaint that it's a private. We do allege that it's privately held. We know it's not publicly held. And it's run substantially by the two people that we allege in the complaint, and who were there day in, day out, who held the position of president. They were co-owners. And we allege very specifically, Your Honor, to your point, and I want to get to your point, we allege very specifically, why should they be held to the status of an employer? Because they were responsible, and we allege, for compensation decisions, personnel decisions, work assignment decisions, operational control, hiring, firing. I mean, you can't ask for more. It alleges everything that you would need to allege to start discovery, to at least lay the basis. Is it a federal standard that's applied in determining whether they should be held accountable as individuals? Oh, yes, it is a federal standard. The FLSA is very clear on this. Third Circuit has talked about this subject over and over again. And in fact, this is very interesting. And this, I find to be somewhat odd, given the decision here. The district court, in its own decision, in Shaqib, which we cite in our brief, which is a recent decision, that district court said, and I'll quote this because it's so critical, this court, the court rather, is mindful that employer determination, and he was talking about individuals, not companies, but individual liability, that employer determination is a fact-intensive inquiry such that it can rarely even be made on summary judgment. Okay, agreed. The same judge dismissed this case on the pleadings. I find that very inconsistent. And so this complaint lays out the essential elements of employer liability. What about the joint employer, the joint employer theory? I mean, it seemed to me that Thompson first worked for one entity and then worked for another entity. How did they become joint? Sure. And when did this, when did the violation occur, the FLSA violation, alleged violation occur? The FLSA violation, okay, to your point, Your Honor, she began working in the summer of 2011, 10, and she worked for, because she was hired, what she thought was a company called Security Atlantic Mortgage. She was hired, actually, I apologize, in 2009, June of 2009. She was hired what she believed to be a company called Security Atlantic Mortgage. However, when she was brought into training, she was told by the head of the training department, well, I'm from R.E.M.N. But a sister corporation is not necessarily a joint. I agree, I agree, but there's a limit to what a worker at a cubicle who processes paper could really know about the connection. She hears things, she sees things, but if you're asking her to know a lot more than that, it's unrealistic, because she's just doing her job. Okay, but you're the one who wrote the complaint. Correct. And we're basing this on what's said in the complaint. What she told me and what she knows. I know nothing about this complaint. Well, I know, but you wrote the complaint. Correct. You're a lawyer. Yes. You understand what a joint relationship is. Yes. So what do you say in the complaint that shows that they were joint companies? We say that this company, that we say it elaborately, that R.E.M.N. became the face of SAMC after the HUD did an investigation of the mortgage practice. So why aren't there separate employers? You have Atlantic Security up until February of 2010, and then you have R.E.M.N. after that. Because we allege that even after that point, we allege that underwriters were continuing to get checks made with a payer who was Security Atlantic. They continued to make these checks paid to the people at the same time when they purportedly weren't operating anymore. So that's a fact, and there it is. Is Security Atlantic defunct now? We don't know that. This is what the judge found without any evidence. We didn't allege it in our complaint. It was in a brief that they're defunct, and the judge, for some reason, adopted that as a finding of fact. Yeah, but the question is if you're trying to allege joint employer, the fact that there might be some mix-up on the check is payable to this person – from this entity and so forth isn't what's going to be the critical fact in determining joint employer. I mean, obviously, there's more to it than that. So what have you alleged other than that per chance? Right. We allege that the same management continued to be the same management. But that's not joint. We're talking about joint. But we're saying that there was a continuity. From the very beginning, there was talk of REMN and SEMC as one item. From the very beginning, she was told this. She was told this. She's not in the board meeting. She's not in the room. She's told this. And then what do we see? We see from her, from the fact that she can relate to me, and I can only relate to what she says, at her limited role. We see a transition of sorts. We see that notwithstanding this alleged transition, SEMC, a port of the defunct company, is still writing checks to the employees. That's a critical, critical factor in employer relationship. Payment is the most fundamental factor in employment, in an employment relationship. The court has said this in Covington versus the MBA. So I'm just saying that there was things happening along the way, and we just need discovery to sort this out. And we're going to need discovery to find out if there's liability of each of these companies. We're going to need discovery to address the successorship issue. We're going to need discovery to find out who these owners are and where they belong. Joint employer is just simply another piece that will come out in the same discovery. There will be no additional burden put on these parties to answer the questions that really are leading conclusions based on the same facts. And enterprise, and this court ruled in enterprise, that if there's a commonality of control, then there's joint employer. That will come out in the same exact discovery. There will not be an additional burden on this company. So you need joint employer to get back to SEMC to make REMN responsible for what you claim is SEMC. Yes, right. It's critical because if we don't get that, and if we don't get the individual employers, and I don't know what these individuals have in terms of wealth, but it's critical because if we can't connect it, and maybe we can't, and so be it. We'll live with the results. But if we can't at least take a shot at the issue, then that whole period is going to go, it's lost. And it's lost, and we feel based on what we've heard that there is some monkey business going on here. That all of a sudden REMN appears, and it says we are not, which effectively becomes the face, the face of SEMC. But all work in progress goes to them. The same management continues. Nothing changes. Well, all I'm saying is I wish I had some more facts on joint employer. We have some. I think we have enough in this context based on judicial experience, based on context, and based on common sense, which Twadley talks about as being the touchstone of what the judges should be doing when assessing these things to have that piece part of the assessment. And look, this court has ruled multiple times, it's in our brief, that there could be multiple employers of an employee at the same time. And that this goes on all the time. There's all kinds of machinations. And if we can't at least nail it down, you're giving SEMC sort of a get-out-of-free-jail card, and there's no reason to in this case. There just isn't. All right. Thank you very much. We'll hear from you now. Thank you, Your Honors. Go ahead. Thank you, Your Honor. May it please the Court. My name is Ari Caron. I represent the defendants in this matter. I think what plaintiff's counsel just said told you much of what the district court found problematic. Take a shot. That's not what the Supreme Court has said you can do is take a shot. You don't just have to throw things against a wall anymore, make conclusory allegations. Well, you're not talking about an employee who ab initio has access to all of this information. Certainly, there seem to be sufficient allegations with regard to individual liability. I mean, it's a small, privately held company, and these are two of the principles. Yes? When I ask that rhetorically, I'll answer that question. But what I'm referring to is the way the complaint drafts it. The complaint conflates Raman and SEMC, first of all. It treats them as one entity throughout the entirety of time without sufficient facts establishing either success or liability under any standard of any court or joint liability status. What is one to infer when there's confusion on both sides of the, I guess it's February 2010 divide, right? I mean, whether you go from that point into the past, that point into the future, there seems to be indicia that there is a management presence, REMN, before SEMC continues after that date. With that confusion, what's a plaintiff to do? Well, I think the confusion is actually created by the complaint, not by the facts. And I think that's the problem that the district court found. The district court specifically said in its order, dismissing the first complaint, and I will read from it, the appendix, which is at 85 of the joint appendix, specifically said and told the plaintiff exactly what she needed to do. The judge said, plaintiff addresses her claims to defendants collectively without specifically alleging any employment relationship with each. And then further in this paragraph, plaintiff does not, however, allege any specific facts connecting her employment to each named defendant. Without such specific facts, both the court and defendants are unable to determine the extent to which any of the named defendants could be liable. That was the problem with her complaint, and she never fixed it. Do you think that there is at least a viable FLSA claim here? It's just a question of identifying who the employer is. I don't even know from the complaint because there's no facts. She said she worked more than 40 hours without receiving overtime. Isn't that enough to state an FLSA claim? Not necessarily at all. In other words, there's conclusive assertion in looking at an FLSA claim, and again, the Supreme Court instructs us this with respect to context. It says that a district court has the power and should have the right to be able to look at a case based on its knowledge, based on the context of the case, and demand certain specifics so that it can manage its docket and prevent... What more do we need? Yeah. Sorry. What more you would need in this case to state an FLSA case? Well, you can respond to Judge Roth's question. Go ahead. I was saying in the complaint or on summary judgment? In the complaint. There have to be allegations at least, not proof. There's allegations that she worked more than 40 hours a week and was not paid overtime. There are allegations that she worked for the two companies. There are allegations that the two named individuals are the ones who are officers and run the companies. Now, doesn't that plead an FSLA claim? Your Honor, let me address each one in turn. First of all, the allegations are that they were co-owners of SAMC. It doesn't say they were co-owners specifically, but they... I think I believe, with all due respect, Your Honor, I do believe it said co-owners. Okay. And then in 2011, after she's already gone, it's the first time they've become officers at Remin. There's no discussion of what their role was at Remin. They just treat Remin, REMN, and SAMC as one, as if it would occur. But when you read the complaint, it doesn't talk about any role they had at Remin after she had, after SAMC essentially went out of business. Yeah, but you have to answer both questions, right? Because they're easily put together. Was there, has there been an FLSA claim stated based on everything that's in there? And isn't it as simple as she claims that she worked overtime, she has the statement from one of the officers saying, I don't pay overtime to underwriters. There is the statement with regard to the two individuals that they are in charge of the hiring, the firing, the determinations with regard to compensation, and several other things. Isn't that enough for an FLSA claim? No, not after Twombly, Nick Ball, Your Honor. The reason why is, let me address the point of the comment that he's referring to one of the individuals, not both, by the way. That comment was made in June of 2010, after SAMC had ceased doing business, after he was now, she was now working at Remin. But there's no allegation that when he, at the time, Mr. Chapman made that comment, he had any role with Remin whatsoever. There's no allegation he was an officer. In fact, he doesn't become an officer according to the complaint until sometime almost a year later. So at that point, who is he? According to the complaint, he's nobody effectively. So it would be like asking anybody out there and saying, hey, do you pay overtime? I don't. That's not, he's not speaking for the company. Isn't it a fair inference to be drawn from the allegation of the complaint, that he was in the supervisory position? Why would she go to him if he is not her supervisor? He is not in control. I don't think that is an inference you can fairly draw. You know, when you talk, when she talks about the role of these individuals, and I want to bring it back to some extent to the context and what's missing in this complaint. When you see an FLSA, and I'm sure your honors have seen many of them over the past several years, you usually see allegations that talk about this is what I experienced. When I worked over at SAMC, this is who supervised me. This is who I worked for. This is who hired me. This is the persons I reported to. You know, I worked these many hours. This was my typical schedule. All those specific details, these are not hard things to allege. They're in everybody's common everyday occurrences. None of them are here. And when you speak to that as to it pertains to this case, when you look at it, what you see here is what are the allegations against Mr. Chapman and Lamparello. One, that they were co-owners. We don't know what percentage ownership. We don't know what they did. It doesn't, by the way, allege they were responsible for hiring and firing. But that's not what notice pleading is about, right? I mean, we're talking about notice pleading. Your clients are on notice with regard to what the claims are. It's not like they look at this and they go, oh, my God, what could this ever mean? Paragraph 26 of the amended complaint alleges that Lamparello and Chapman made decisions concerning Security Atlantic's and REM's day-to-day operations, hiring, firing, promotions, personnel matters, work schedules, pay policies, and compensation. Again, but that's quite different than being responsible. Lamparello made decisions that concerned. Any decision could ultimately concern. Are you familiar with our decision in Haymarger? Somewhat, Your Honor, yes. All right. How is that not controlling here? Well, I think what you're actually looking at here in this particular case, Your Honor, is the fact that when you look at the Supreme Court standard in Twombly and Iqbal and you talk about generals' assertions that are naked and devoid of further factual enhancement, which is what we're talking about here, you can allege any of these generalities. Give me specifics. Some, any. And again, the district court has the power to address those specifics and require something, some meat on the bones, so to speak, as you call it, before you subject parties to baseless litigation. In this particular case, you've, not you, Your Honor, I'm sorry, plaintiff has conflated completely the separate identities of these two companies. You can't read this complaint.  The quote from my copy is about the individuals. But I think, Your Honor, there is a connection here because since it is the individual liability presumed is based upon the existence of an employer relationship at the outset from either one of the companies and we can't really determine that, then you really can't determine the individual liability. In other words, this complaint so conflates everything. If Chapman is there the entire time with both Security Atlantic and REMN, isn't there enough to say individual liability? I don't care who the actual employer is in that context. Chapman has individual liability, individual responsibility, because he made decisions that affected that individual. Well, he made decisions concerning allegedly. His liability is not vicarious. His liability is direct. That is true. But I would say that, again, we don't know what his role was altogether at REMN at all because there's nothing in the complaint that says Chapman. And isn't that what discovery is for? No, Your Honor. Respectfully, discovery is after you've pleaded facts sufficient for the district court to determine. You're saying there's not enough in this complaint to make relief plausible, to raise a plausible claim for relief? I think, Your Honor, in this complaint you're talking naked assertions that are general in nature without further factual enhancement, which is what the Supreme Court said is not enough, especially when you look at the context of things. It should be pretty easy to plead. This is who I work for. This is to just say made decisions concerning. And you could say that about any employee. You could say almost any employee makes decisions of any level, whether they're in your supervisory role or not, that makes a decision concerning. That's pretty broad. He gave us a specific allegation that Chapman says, I do not pay my underwriters overtime, period. A statement made, again, after she was no longer working at SAMC where he was a co-owner, where he had some role. She's also alleging a claim against REMN for that period of time after. But we don't know when, again, the individual liability. Isn't that what discovery is for? Aren't you hiding the ball here? Your Honor, I don't think so. I think we filed the motion and the district court agreed with us. The district court found that based on the district court's experience handling FLSA matters and addressing what it expects to see in complaints of this sort so we don't have parties brought in to bear, it's not a question of suing everybody and sorting it out later. That's what the Supreme Court guards against and suggests against in both Tawamboli and Iqbal. And so we have an underlying remaining claim against both the companies, irregardless of the decision on joint liability, individual liability, successor liability, that there is a basic underlying FSLA claim that has been made that has not been, if it was dismissed, was not properly dismissed. Not based on the complaint, Your Honor. I can't envision what could or could not have happened. I'd note here also, by the way, to the extent that, and the reason why. You know, when you briefed it below, you didn't, this point wasn't argued. Actually, Your Honor, it was argued in the first motion to dismiss, which the court actually adopted, and I can raise it, it's page 47, page 48 of our, of the joint appendix, where we specifically address this point that you're raising. And we said, we said page 47, it begins, specifically plaintiff does not allege what wrongs SAMC specifically committed or when such wrongs were allegedly committed. Indeed, the complaint, as pled, renders SAMC and REM virtually indistinguishable, despite the reality that these are two clearly distinct entities. Well, they allege that they worked more than 40 hours a week and were not paid overtime. Aren't those the specific wrongs? Actually, Your Honor, you can't read that into the complaint because she treats them as one entity throughout the entirety. She talks about simultaneous employment. And then at some point, she just refers to them as defendants. So, if I may, when she says defendants, you can't tell, and the district court actually highlighted that in its order, you can't tell whether you're talking about defendants, REM and because of its joint employer status, its successor liability status, or because of REM. She doesn't make any allegation. For example, it's very simple, and again, I would note, Your Honor, that in the context of this, this court did, I'm sorry, the district court did not dismiss this and not give her leave to amend. It specifically told her what to do, what it expected, what it wanted, and she chose to pursue an appeal rather than add a couple of paragraphs, if in fact she could have. And I would suggest the fact she didn't is telling. But to go back to the question of whether there was a sufficiency alleged, the only things alleged are, if you look at the complaint, very generic statements of I was employed, I was exempt, or I was treated as exempt, I was not paid overtime. There's nothing in specifics as to tell me a little bit about what happened at each place. And when she conflates the defendants as only referring to them as, quote, defendants, you don't know whether that's REMN acting as REMN as a, quote, primary liability as they treated on the complaint, or if it's REMN simply by virtue of the derivative liability associated with the theory of joint employer's successful liability. I thought my colleague was referring to the fact that the district court didn't rule on the direct liability issue. I think the district court did. And if you look at page 85 of the appendix, what the district court is saying is exactly what we said, is based on the way that they collectively treated this entire thing by throwing and lumping them on as defendants without having any discussion what happened at either place, you can't tell what's alleged against either. And I can point you to that. It's page 85. What did the district court say? The district court said. Specifically? Yes, Your Honor. The district court said, bear with me for one moment. Plaintiff does not allege any specific facts connecting her employment to each named defendant. Without such specific facts, both the court and defendants are unable to determine the extent to which any of the named defendants could be liable. That is the fundamental flaw with this complaint. It groups a bunch of people and entities all into one basket and then says, they all did this. And at the same time, espouses different theories that make it unclear as to is Remen's, let's talk about Remen, for example. Is Remen's liability simply derivative of the fact on the success ship or joint liability? I would request that the court look and see, is there anything that specifically talks about Remen and says, Remen did this wrong? Or that the, I see my time is up, Your Honors, if I may finish my answer. Go ahead. That Remen did this wrong or SAMC did this wrong or here's what happened at SAMC or here's what happened at Remen. There's no discussion with that whatsoever. Look at the plaintiff's brief on page 13. I believe it's 13 of their brief where they say, yes, we did. And then they go through it and they raise some issues. And all it talks is about defendants, defendants, defendants, without clarifying which defendant did what or when. That is exactly what the district court was unclear about. That's exactly what we were unclear about. The reason we moved to dismiss, the reason why the court granted, and they asked plaintiff to clarify. She tried once. She didn't actually try once. She added no new factual allegations, but rather legal theories obfuscating the issue even further. And then when the court, again, remade its decision, the court dismissed the case, again, leading us to be here, even though she had leave to amend. Thank you very much. Okay, thank you very much. Thank you. Thank you. May it please the court. For my part of my rebuttal, I'm just going to simply ask the court respectively to look at the, which I'm sure you all of course are doing, to look at the complaint, which is replete, replete with facts about Redmond individually, replete with facts about SAMC individually, replete with facts about Mr. Lamparello, Mr. Chapman, why they are successors, why there's a joint employee relationship. After the case was dismissed by the district court, which we think was improper, but the court said leave to appeal. We went back to Ms. Thompson. We exhausted everything we can to get as much facts as we could to satisfy this heightened standard of specificity that the court required, and we submitted it. We resubmitted 76 paragraphs. I wasn't going to talk about this, but since counsel did and he made references to complaints that he's seen that have given specifics, I've seen hundreds of complaints in this area. This is what I do for a living. This is one of the most specific complaints I've ever seen and prepared, only because the court asked for it on the second time around. So that's just not the case, and if the court looks at their own precedent, which we cite in our brief, this is extremely adequate. The other thing is, is that when the counsel states, when defendants state rather, that there's nothing in here that says that Remen is responsible to her, at least primarily, and SCMC is at least responsible primarily. I just find that mind-boggling. Each of them paid the woman. That's the most, they paid her. They're not their employer, so according to this district court and defendants, she worked for a ghost. So would you say you have an FLSA claim against security Atlantic until February of 2010 and against Remen after February? At minimum. At a minimum, that's what you're saying. At minimum. We also say that Remen and we have. Right, I know you say they're joint employees. And successorship is elaborately laid out and individuals. Right. Right. But I mean to suggest that the court did each time, that she didn't work for anybody, she has no right to be paid, and she has no right to overtime is, I don't know what to say. I've never seen that before. She worked for nobody evidently, and the defendant says it's true. Now, we know defendants really doesn't believe that because even the defendant in their first motion to dismiss didn't take that position because frankly, it would have been a little embarrassing and bizarre to take that position, and they didn't. It's in our appendix. They didn't. Yet the judge, for reasons that I can't surmise, chose to dismiss the case against the two primary employers also. Not asked to do that. Incomprehensible. And finally, and finally, what Twombly, which defendants have just talked about, talks about, is to look at each complaint based on context, common sense and judicial experience. The very things that this court, the lower court, expects defendant to know to satisfy the threshold requirement to get some type of justice are facts that by definition the people who are protected by this law are not the people who could possibly know these facts. The people who are not exempt are the workers, the low-level workers, the people that know the facts, like the judge asked for, evidence of a business plan, ownership percentages, etc., etc.,  but those are the very people that by definition are imparting to these meetings and discussions and access to records and all of the things that this judge, the court, is demanding to know before opening the door to the plaintiff. That defies common sense. That's what Twombly said. Look at the cases in context. Twombly was a case involving a vast case of antitrust, very complicated discovery. It involved national security at the highest level. The attorney general was being challenged after September 11th. Of course the Supreme Court said, need a little more here. Do you want to wrap it up? I'm sorry. I apologize. This is the diametric opposite of those kind of complicated issues. This is fundamental. And if this court sees fit to sustain the district court, it's just saying this, it's not hyperbole. This case is important, not just for Ms. Thompson, but because it will basically send the message that the FLSA is a dead letter to this circuit. I cannot believe the circuit court wants to do that, and it has never done that in the past. Thank you, Your Honor. Thank you very much. The case was well-briefed and well-argued. We appreciate it. Have a good day. We'll take it under advisement.